ISAAC N. HIDDEN, GUARDIAN v. LESTER CHAPPEL.

*Action in behalf of an incompetent ward for purchase money.*

A guardian cannot maintain an action against the purchaser of land as for money due to an incompetent ward where the ward had no interest in the land, but the purchaser had retained in his hands to be paid to a proper person the amount of a debt due the incompetent from the vendor and which the vendor had agreed to pay the ward out of the proceeds of a sale.

Error to Wayne.    Submitted June 8.    Decided June 14.

ASSUMPSIT.    Plaintiff brings error.    Affirmed.

*George H. Prentis* for appellant.

*Albert Crane* for appellee.    There were no contract relations between the parties to the suit: *Crow v. Rogers* (1725) 1 Str. 592; *Owings v. Owings* (1827) 1 Harr. & Gill 484; *Price v. Easton* (1833) 4 B. & Ad. 433; *Blymire v. Boistle* (1837) 6 Watts 182; *Mellen v. Whipple* (1854) 1 Gray 317; *Campbell v. Lacock* (1861) 40 Penn. St. 448; *Tweddle v. Atkinson* (1861) 1 B. & S. 392; *Clapp v. Lawton* (1862) 31 Conn. 95; *Robertson v. Reed* (1864) 47 Penn. St. 115; *Pipp v. Reynolds* (1870) 20 Mich. 88; *Turner v. McCarty* (1871) 22 Mich. 265; *Exchange Bank v. Rice* (1871) 107

Mass. 37; *Halsted v. Francis* (1875) 31 Mich. 113; *Pettee v. Peppard* (1876) 120 Mass. 522; *Prentice v. Brimhall* (1877) 123 Mass. 291; *Hicks v. McGarry* (1878) 38 Mich. 667; *Hunt v. Strew* (1878) 39 Mich. 368; *Ayres v. Gallup* (1880) 44 Mich. 13.

COOLEY, J. The plaintiff, who is guardian for William Henry Fairman, an incompetent person, sues to recover a sum of money claimed to be due to the ward on a sale of land to the defendant by one Hiram Fairman. The evidence for the plaintiff is as follows:

Mrs. Lydia Fairman testified:

"Hiram Fairman was my son. He is now dead. William Henry Fairman is my son, and is now living. My son, William Henry Fairman, had some property left by my husband; a small piece of land which had been set out to him. He had some money from his father's estate. Never had any money after his father's death, only a little I gave him. This three hundred and fifty dollars he loaned his brother. That was his own money. He let his brother Hiram have that $350 for the purpose of paying towards his land. He let him have it with the agreement that when he sold it he would pay him back his money. William Henry was to have his money back again when Hiram sold it; between us there was no writing, but between us, it was the agreement that when he sold it he should have his money back again. His brother Hiram had some money belonging to William Henry, for the purpose of paying it on a piece of land, which he did. Hiram afterwards sold the land to the defendant, Mr. Chappel. William Henry was to have his portion of the money out of the land when it was sold. The land was taken in Hiram's name. William Henry put in there or loaned Hiram three hundred and fifty dollars towards the purchase of that land, and it was held by him two or three years. The amount of William Henry's money which was invested in this land in Hiram's name was three hundred and fifty dollars. This land was conveyed by Hiram Fairman to the defendant, Mr. Chappel. William Henry did not get his money back again out of the land."

Nathaniel Kenyon testified:

"Know the defendant in this case; know William Henry Fairman; knew Hiram Fairman in his life-time; knew the piece of land spoken of by the last witness, Mrs. Lydia Fair-

man, which was purchased in the name of Hiram Fairman; Hiram Fairman sold that land to the defendant, Lester Chappel; at one time the defendant, Mr. Chappel, and I were talking about the land; it was at the time that Hiram was talking about selling it and before he sold it; I told the defendant that William Henry had an interest in that land; he said he knew it. I told him he must not buy unless William Henry's money was secured, as William Henry was not competent to do business for himself; that is a fact; William Henry was not competent, and has not since then been competent to do business for himself; he was an incompetent at the time of the conversation, which was before the sale to the defendant, and has been an incompetent ever since."

George A. Starkweather testified:

"I drew a deed of some land situated in the township of Plymouth, by which Hiram Fairman conveyed the land to Lester Chappel, the defendant; at the time of making that deed there was a conversation between Hiram Fairman and the defendant, Lester Chappel, in relation to an interest Hiram Fairman's brother had in the land; the brother was William Henry Fairman; he was regarded as an imbecile; the arrangement between Hiram Fairman and the defendant was that defendant should not pay the full consideration for the land; a portion of it was to remain in defendant's hands; the sum mentioned to thus remain was five hundred dollars; it was to belong to William Henry Fairman, and was to be paid to him whenever the opportunity occurred, so that it could be properly paid, or whenever there was any person who could properly and legally receive it."

The circuit judge instructed the jury that plaintiff's evidence made out no case; and they accordingly gave their verdict for defendant.

It is plain that no case is made out on the the testimony of the mother. The original transaction manifestly was in the nature of a loan by William Henry to Hiram, and the former had no interest in the land, but merely expected to be paid from the proceeds when the land was sold. The case then must stand on the evidence of Starkweather as to the arrangement made when the land was sold. This evidence is supposed to show money in defendant's hands belonging to the plaintiff; but it shows nothing of the

sort. It shows only that on a sale of land by Hiram upon which a sum of money became due to him from defendant, it was understood this obligation should be discharged by payment to a third party. The case is therefore strictly within *Pipp v. Reynolds* 20 Mich. 88, and the cases which have followed it. See *Hunt v. Strew* 39 Mich. 368, and cases cited. The action is not maintainable.

There is nothing else in the case and the judgment must be affirmed with costs.

GRAVES, C. J. and CAMPBELL, J. concurred.